FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

SEP 2 4 2009

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY:

DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STEVEN A. KEGEL,                                     )
                                                     )
                Plaintiff,                           )        3:06-CV-00093-LRH-VPC
                                                     )
v.                                                   )
                                                     )        ORDER
BROWN & WILLIAMSON TOBACCO                           )
CORPORATION, et al.,                                 )
                                                     )
                Defendants.                          )
                                                     )

Before the court is Plaintiff Steven Kegel's Motion to Reconsider (#155[1]). Defendants Brown & Williamson Tobacco Corporation, et al. (collectively "Defendants") have filed an opposition (#161) to which Plaintiff replied (#169). Also before the court is Defendants' Motion to Dismiss Plaintiff's Tenth Claim for Relief (#160). Plaintiff has filed an opposition (#168) to which Defendants replied (#172).

I.      **Motion to Reconsider**

Plaintiff seeks partial reconsideration of the court's March 10, 2009, order (#150). In particular, Plaintiff asks the court to reconsider the portion of its order granting summary judgment on Plaintiff's claim for benefits under the Welfare and Fringe Benefit Plan, the Retirement Plan, and the Special Severance Benefits Plan pursuant to 29 U.S.C. § 1132(a). In its order, the court

---

[1]Refers to the court's docket entry number.

1    found that Plaintiff had failed to exhaust his administrative remedies because he "failed to pursue

2    his right to receive benefits under the [plans]." (Order (#150) at 19.) The court further found that

3    Plaintiff failed to demonstrate that exhaustion of his administrative remedies would have been

4    futile or that the remedies available to him were inadequate.

5        Plaintiff has filed the motion to reconsider pursuant to Federal Rule of Civil Procedure

6    59(e). "While Rule 59(e) [of the Federal Rules of Civil Procedure] permits a district court to

7    reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used

8    sparingly in the interests of finality and conservation of judicial resources.'" *Carrol v. Nakatani*,

9    342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Reconsideration of the court's initial decision

10   is inappropriate in the absence of (1) newly discovered evidence; (2) an intervening change in

11   controlling law; or (3) clear error or manifest injustice. *Carrol*, 342 F.3d at 945; *School Dist. No.*

12   *1J, Multnomah County, Or. v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citations

13   omitted).

14       Plaintiff argues the court erred because "Plaintiff is deemed to have exhausted the

15   administrative remedies available under the plan as a consequence of Defendants' failure to follow

16   claims procedures consistent with the requirements of 29 C.F.R. § 2560.503." (Pl.'s Mot. Recons.

17   (#155) at 2.) Section 2560.503-1 "sets forth minimum requirements for employee benefit plan

18   procedures pertaining to claims for benefits by participants and beneficiaries . . . ." 29 C.F.R. §

19   2560.503-1(a). Where a "plan fails to establish or follow claims procedures consistent with the

20   requirements of [section 2560.503-1], a claimant shall be deemed to have exhausted his

21   administrative remedies available under the plan . . . ." 29 C.F.R. § 2560.503-1(l).

22       As a preliminary matter, the court notes that with regard to the Welfare and Fringe Benefit

23   Plan and the Retirement Plan, Plaintiff has yet to provide evidence indicating that he applied for

24   such benefits. As the court's previous order recognized, "none of the correspondence in any way

25   addresses Plaintiff's eligibility for the Welfare and Fringe Benefit Plan or the Retirement Plan."

26

                                           2

1   (Order (#150) at 19.)   Further, there is no evidence before the court suggesting that Defendants

2   denied Plaintiff benefits under these plans.  To the contrary, the letters conveying Plaintiff's

3   termination state that as a result of the termination, Plaintiff was no longer eligible for short term

4   disability benefits and Special Severance Benefits.  The letters make no mention of the Welfare and

5   Fringe Benefit Plan or the Retirement Plan.  Accordingly, to the extent the motion to reconsider

6   challenges the court's findings as to the Welfare and Fringe Benefit Plan and the Retirement Plan,

7   the court will deny the motion.

8        As to the Special Severance Benefits, on March 8, 2005, R.J. Reynolds sent Plaintiff

9   a letter notifying him that as a result of his alleged misrepresentations, he was no longer eligible to

10   receive short term disability benefits or the Special Severance Benefits.  On March 15, 2005,

11   Plaintiff responded, sending letters to various R.J. Reynolds employees "request[ing] an appeal of

12   the decision that [he has] been terminated from [short term disability] benefits."  (Pl.'s Opp. Mot.

13   Summ. J. (#128), Exs. 115, 116, 117.)

14        In its previous order, the court held that because Plaintiff failed to appeal the denial of his

15   Special Severance Benefits, he failed to exhaust his administrative remedies.  Plaintiff now argues

16   that deficiencies in the March letters require the court to find as a matter of law that he has

17   exhausted his administrative remedies.  These deficiencies include failing to provide, in violation

18   of 29 C.F.R. § 2560.503-1(g), (1) the specific plan provision on which the adverse benefit

19   determination was based and (2) a description of the plan's review procedures and the time limits

20   applicable to such procedures.  *See* 29 C.F.R. § 2560.503-1(g).

21        Defendants do not dispute that the letters failed to provide the above-cited information.

22   Instead, Defendants argue that they were not required to include the information in the letters

23   because the individual responsible for the letters, Ms. Tremblay, was not the plan administrator.  As

24   Defendants note, 29 C.F.R. § 2560.503-1(g) states, "the plan administrator shall provide a claimant

25   with . . . notification of any adverse benefit determination."  29 C.F.R. § 2560.503-1(g).

26

3

The court disagrees with Defendants' formulaic reading of the regulation. As Plaintiff notes, contrary to Defendants' assertions, the applicable regulations were enacted primarily for the benefit of claimants. The regulations state, "The new standards are intended to ensure more timely benefit determinations, to improve access to information on which a benefit determination is made, and to assure that participants and beneficiaries will be afforded a full and fair review of denied claims." 65 Fed. Reg. 70246 (Nov. 21, 2000); *see also Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (9th Cir. 2006) ("The 'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court . . . ."). Thus, the court finds that Defendants' delivery of the letter by someone other than the plan administrator is not detrimental to Plaintiff's exhaustion argument.

Through the March 8, 2005, letter, Defendants informed Plaintiff that he was not eligible for the Special Severance Benefits. This was an adverse benefit determination within the meaning of 29 C.F.R. § 2560.503-1. *See* 29 C.F.R. § 2560.503-1(m)(4) (defining an adverse benefit determination as "a denial, reduction, or termination of . . . a benefit . . . that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan . . . .") Because the letter failed to provide the specific plan provision on which the adverse benefit determination was based and to describe the plan's review procedures and the time limits applicable to such procedures, the letter violated the requirements set forth in 29 C.F.R. § 2560.503-1(g). As such, under 29 C.F.R. § 2560.503-1(l), Plaintiff is "deemed to have exhausted his administrative remedies available under the plan . . . ." 29 C.F.R. § 2560.503-1(l).

**II.    Motion to Dismiss**

Defendants seek dismissal of Plaintiff's tenth claim for relief, which alleges Defendants wrongfully terminated Plaintiff in retaliation for exercising his rights under the Short-Term Disability Benefits Plan in violation of the "fundamental public policy of the State of Nevada." (Fifth Am. Compl. (#154), ¶ 122.) Defendants argue the complaint fails to state a claim upon

4

1  which relief can be granted, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).[2]

2  To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the

3  Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela*

4  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short

5  and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

6  8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however,

7  a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a

8  cause of action" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell*

9  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

10  Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

11  accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1949 (internal

12  quotation marks omitted). A claim has facial plausibility when the pleaded factual content allows

13  the court to draw the reasonable inference, based on the court's judicial experience and common

14  sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility

15  standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

16  defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

17  defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

18  relief." *Id.* at 1949 (internal quotation marks and citation omitted).

19  In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as

20  true. *Id.* (citation omitted). However, "bare assertions . . . amount[ing] to nothing more than a

21  formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."

22  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (*quoting Iqbal*, 129 S. Ct. at 1951)

23  _____

24  [2]In its March 10, 2009, order (#150), the court granted Plaintiff leave to file an amended complaint alleging a wrongful termination claim based upon the exercise of his rights under the Short-Term Disability

25  Plan. Nonetheless, the court cautioned, "[The court's] ruling is in no way indicative of whether Plaintiff can in fact state a viable wrongful termination claim or whether Plaintiff has evidence to support such a claim."

26  (Order (#150) at 17 n.10.)

1   (alteration in original) (internal quotation marks omitted).  The court discounts these allegations

2   because they do "nothing more than state a legal conclusion – even if that conclusion is cast in the

3   form of a factual allegation." *Id. (citing Iqbal*, 129 S. Ct. at 1951.)  "In sum, for a complaint to

4   survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

5   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id. (quoting*

6   *Iqbal*, 129 S. Ct. at 1949).

7        Defendants argue that Plaintiff's claim for wrongful discharge based on the exercise of his

8   rights under the Short-Term Disability Benefits Plan fails as a matter of law because Nevada law

9   does not recognize such a claim.  "The essence of a tortious discharge is the wrongful, usually

10  retaliatory, interruption of employment by means which are deemed to be contrary to the public

11  policy of [the State of Nevada]." *D'Angelo v. Gardner*, 819 P.2d 206, 216 (Nev. 1991).  Nevada

12  courts have recognized that discharging an employee for seeking workers' compensation benefits,

13  performing jury duty, or refusing to violate the law violates public policy and supports a claim for

14  tortious discharge. *Id.* at 212 (citations omitted).  "Comparable tortious discharges may arise when

15  an employer dismisses an employee in retaliation for the employee's doing of acts which are

16  consistent with or supportive of sound public policy and the common good." *Id.* at 216.

17       The Nevada Supreme Court has stated, "Clearly, the public policy of this state favors

18  'economic security for employees injured while in the course of their employment.'" *Dillard Dep't*

19  *Stores, Inc. v. Beckwith*, 989 P.2d 882 (Nev. 1999).  Recognizing this policy, the Court has upheld

20  tortious discharge claims stemming from employees filing workmen's compensation claims. *Id.* at

21  886; *Hansen v. Harrah's*, 675 P.2d 394, 397 (Nev. 1984).  As Defendants noted, in so holding,

22  these cases rely in part on Nevada's legislative scheme governing workmen's compensation, and

23  Nevada law does not contain similar provisions addressing employer-provided benefit plans.

24  Nonetheless, "the failure of the legislature to enact a statute expressly forbidding retaliatory

25  discharge for the filing of . . . claims does not preclude [the court] from providing a remedy for

26

6

1   what [the court concludes] to be tortious behavior." *Hansen*, 675 P.2d at 396.

2       It is not surprising that Nevada law fails to address the availability of a wrongful discharge

3   claim based upon allegations that the employer terminated the plaintiff for exercising his short-term

4   disability benefits because the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C.

5   §§ 1001-1462, extensively covers employer-provided benefit plans. *See* 29 U.S.C. § 1140 ("It shall

6   be unlawful for any person to discharge . . a participant or beneficiary for exercising any right to

7   which he is entitled under the provisions of an employee benefit plan . . . .") Nonetheless, here, the

8   court has held that the Short-Term Disability Benefit Plan is a "payroll practice exempt from

9   ERISA." (Order (#150) at 17.) Thus, Plaintiff does not have a statutory remedy available to him.

10  "It is precisely in such cases, i.e., where no comprehensive statutory remedy exists, that courts have

11  been willing to create public policy tort liability." *D'Angelo v. Gardner*, 819 P.2d 206, 218 (Nev.

12  1991) (citations omitted).

13      In light of the lack of a statutory or other tort remedy available to Plaintiff and the Nevada

14  Supreme Court's recognition of the importance of protecting the interests of injured workers, the

15  court finds that under the circumstances presented in this case, terminating Plaintiff for exercising

16  his rights under the Short-Term Disability Benefit Plan is contrary to the public policy of the State

17  of Nevada. Accordingly, the court will deny the motion to dismiss.

18      IT IS THEREFORE ORDERED that Plaintiff's Motion to Reconsider (#155) is GRANTED

19  in part and DENIED in part.

20      IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#160) is DENIED.

21      IT IS SO ORDERED.

22      DATED this **24** day of September, 2009.

23

24                                          _____

25                                          LARRY R. HICKS
                                            UNITED STATES DISTRICT JUDGE

26
                                    7