**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEVEN A. KEGEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:06-cv-00093-RCJ-VPC |
| ) | |
| BROWN & WILLIAMSON TOBACCO CORP. ) | **ORDER** |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

This case arises out of the merger of two tobacco companies and the resulting loss of Plaintiff's employment and benefits. Pending before the Court is Defendant R.J. Reynolds Tobacco Co.'s ("RJR") motion for the Court to reconsider denial of summary judgment or to permit interlocutory appeal, as well as Plaintiff's motion to strike RJR's motion. For the reasons given herein, the Court denies the motion to strike and denies the motion for reconsideration.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff began working for American Tobacco Co. ("American") in October 1980. American merged with Defendant Brown & Williamson Tobacco Co. ("B&W") in 1995, at which point B&W hired Plaintiff with full credit for seniority earned while working for American. In October 2003, B&W announced a possible merger with RJR. The merger was to provide for a "rule of 70," under which salaried employees of at least 50 years of age as of the date of termination, and whose age and tenure together equaled or exceeded 70 years as of that date, would qualify for a severance plan and benefits upon termination.

B&W was to compete its merger with RJR in August 2004, and Plaintiff would not be retained.  Because Plaintiff would not turn 50 until April 2005, he would not qualify for benefits under the rule of 70 even though his age and tenure together would exceed 70 years in August 2004.  If Plaintiff could maintain his employment until April 2005, however, he would qualify for benefits under the rule of 70.

Under the B&W short-term disability plan, an employee could receive up to twelve months of short-term disability benefits and would not be terminated during that period.  In May 2004, Plaintiff sought treatment with a neurosurgeon for back pain.  On June 2004, B&W placed him on short-term disability, and for this reason B&W did not terminate him in August 2004 as originally planned.  The examining physician, Dr. Rappaport, reported that Plaintiff had self-reported that he needed assistance caring for himself, that he could not lift anything heavy, could not read as much as he wanted to because of pain in his neck, could hardly drive, could hardly do any recreational activities, could not wash or dress without help, could not sit for more than thirty minutes or stand for more than ten, and that his wife had to do everything for him.  The company medical consultant, Dr. Blum, reviewed Dr. Rappaport's report and noted that the AMA guidelines required findings of disability to be based on physical findings, not a subjective report of pain.  Dr. Blum had never seen a person in Plaintiff's condition—based on the MRI evidence—who was totally impaired.  He also noted inconsistencies between Plaintiff's self-reported pain and his self-reported painkiller use.  He also noted that being able to sit more comfortably than stand was inconsistent with a diagnosis of lumbar disease.  Also, Dr. Rappaport's previous October 2003 examination had found Plaintiff able to perform his job.

As is usual in such situations, the employer was suspicious and hired an investigator.  On February 1, 2005, the investigator observed Plaintiff drive from his home to a gym, enter with a gym bag, and exit approximately ninety minutes later, without any apparent difficulties.  On February 22, 2005, the investigator observed Plaintiff shoveling snow from his driveway without

limitation of motion or apparent pain. On February 24, 2005, the investigator observed Plaintiff drive to a gym where he lifted weights of up to 155 pounds for almost an hour and jogged on a treadmill. RJR concluded that Plaintiff had misrepresented his physical condition, and it therefore terminated his disability status and employment.

Plaintiff sued several Defendants in this Court in 2006 on ten causes of action. (*See* Compl., Feb. 17, 2006, ECF No. 1). The Hon. Brian E. Sandoval recused himself in 2008. (*See* Min. Order, Sept. 23, 2008, ECF No. 126). The Hon. Larry R. Hicks recused himself in 2010. (*See* Min. Order, Sept. 29, 2010, ECF No. 207). The operative version of the Complaint lists ten causes of action against B&W, RJR, and several benefit plans thereof (collectively, the "Plans"): (1), (10) Wrongful Termination; (2), (9) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction of Emotional Distress; (5) Declaratory and Injunctive Relief; (6) Violation of 29 U.S.C. § 1140; (7) Defamation; and (8) Breach of Contract. (Fifth Am. Compl., Mar. 26, 2009, ECF No. 154).

RJR moved to dismiss the tenth claim for wrongful termination, and Judge Hicks denied the motion, ruling that Nevada courts would recognize a wrongful termination claim for an at-will employee under the strong public policy exception, assuming Plaintiff had been terminated for exercising his rights under the Plans as he alleged. RJR then moved for summary judgment against the claim, arguing that at least part of its motive for terminating Plaintiff was that he had misrepresented his medical condition. Judge Hicks denied the motion, ruling that there remained a genuine issue of material fact whether Plaintiff's exercise of rights under the Plans was the "sole proximate cause" of his termination.[1] RJR has moved for reconsideration, and Plaintiff has moved to strike RJR's motion.

///

---

[1] If the motive was mixed, there can be no liability for retaliatory discharge. *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998).

## II. LEGAL STANDARDS

### A. Rules 59 and 60

A motion to alter or amend a judgment must be made within twenty-eight days of entry of judgment. Fed. R. Civ. P. 59(e). Here, the relevant order was entered on September 10, 2010, and the present motion was filed seventy days later on November 19, 2010. Therefore the motion to reconsider is untimely under Rule 59(e), and the motion will be considered under Rule 60(b). *Am. Ironworks & Erectors, Inc. v. N. Am. Contr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001) ("[A] 'motion for reconsideration' is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within [twenty-eight] days of entry of judgment.").

### B. Rule 56

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways:

(1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.  ANALYSIS**

The Court believes that Judge Hicks likely recused himself because of the association of McDonald, Carrano & Wilson, Judge Hicks's previous firm, as counsel in the case after he ruled

on the motion for summary judgment. There is no indication that Judge Hicks ruled on the motion for summary judgment under circumstances where he should have recused. The Court will not strike the motion for reconsideration, because it is not scandalous, impertinent, etc. However, the Court will not upset the previous ruling.

In the present motion, RJR argues that ERISA preempts the wrongful discharge claim, but this argument is untimely. An argument based on lack of subject matter jurisdiction is never untimely, of course, but ERISA preemption is only a jurisdictional issue insofar as it *supports* removal jurisdiction as an exception to the well-pleaded complaint rule. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). RJR does not argue ERISA preemption in support of federal jurisdiction (which is not disputed), but as a substantive, Supremacy/Commerce Clause-based defense to the state law wrongful discharge claim. RJR has waived the preemption issue for the purposes of Rule 12 and Rule 56 motions by not timely making the argument, although the issue has not been waived altogether for the purposes of Rule 50 motions. As the Court explained at oral argument, the jury will be appropriately instructed, and the verdict form appropriately crafted, to avoid inconsistent verdicts on alternative theories of relief, depending on preemption issues.

As for the substance of Judge Hicks's ruling, at-will employees may bring wrongful termination claims in Nevada if the termination was for a reason contrary to the "strong public policy" of the state as determined by the Nevada Supreme Court, such as retaliation for filing a worker's compensation claim, *Hansen v. Harrah's*, 675 P.2d 394, 396–97 (Nev. 1984), but the exception only applies if the wrongful motivation was the sole proximate cause of termination, *Allum*, 970 P.2d at 1066 ("We hold that recovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory; thus, a plaintiff must demonstrate that his protected

1  conduct was *the* proximate cause of his discharge." (emphasis in original)).[2] Judge Hicks's

2  ruling is consistent with the rule, because he found there was a genuine issue of material fact as

3  to the issue of sole proximate cause.  The Court will not upset Judge Hicks's ruling in this

4  regard, but Defendants will be entitled to a verdict on the state law wrongful discharge claim if

5  Plaintiff does not prove by a preponderance of the evidence that his applying for short-term

6  disability benefits under the Plans was RJR's sole motivation for his termination.  And as noted,

7  *supra*, RJR has not waived its ability to move for judgment as a matter of law either on this issue

8  or the preemption issue at the close of trial evidence.

9        Unless the trial evidence unfolds in an unanticipated manner, it is unlikely Plaintiff will

10  prevail on his common law wrongful termination claim.  Plaintiff signed an at-will employment

11  contract. (*See* Application and Contract, Jan. 26, 1995, ECF No. 198-2, at 3).  Plaintiff testified

12  that "I believe Reynolds wanted to terminate me for many different reasons, one of them

13  included my workmen's compensation claim, yes." (Kegel Dep. 266:3–5, Jan. 11, 2008, ECF

14  No. 198-2, at 27).  He admitted that he had filed three such claims, and that no one had ever

15  indicated to him that he was terminated because of his last claim. (*Id.* at 267:11–15).  RJR argues

16  that Plaintiff was not fired for filing a claim under the Plan but for misrepresenting his medical

17  condition.  It appears that Plaintiff was terminated only after, and in fact immediately after, the

18  evidence of misrepresentation came to light.  Plaintiff admitted that it is him in the surveillance

19  videos. (Kegel Dep. 69, 158–59).  There is therefore likely at least a mixed motivation, and

20  perhaps a purely legal motivation.  But Defendants must wait to file a Rule 50(a) motion at this

21  stage, or leave the question with the jury.

22  ///

---

[2] At oral argument, Plaintiff's counsel noted that the *Allum* court used the phrase "the proximate cause," and not "the sole proximate cause."  However, Plaintiff failed to note that the *Allum* court not only emphasized the word "the" in the phrase "*the* proximate cause," but also noted explicitly, "We hold that recovery for retaliatory discharge under state law may not be had upon a 'mixed motives' theory . . . ." *Id.*

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Strike Motion for Reconsideration (ECF No. 214) is DENIED.

IT IS FURTHER ORDERED that the Motion for Reconsideration (ECF No. 211) is DENIED.

IT IS SO ORDERED.

Dated this 25th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge